

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4603 | **DATE** | 7/17/2003 |
| **CASE TITLE** | Watts vs. Advance Transformer Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendant's motion (Doc 25-1) for summary judgment is granted. Final judgment entered.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 18 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 38 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SCT | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUL 1 8 2003

| | |
|---|---|
| GREG WATTS, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) 02 C 4603 |
| ADVANCE TRANSFORMER CO., a Division of Philips Electronics North America Corporation, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the Court on Defendant Advance Transformer Company's ("Advance") motion for summary judgment. For the reasons set forth below, we grant the motion.

## BACKGROUND

Plaintiff Greg Watts worked for Advance, a division of Philips Electronics North America Corporation ("Philips") as a human resources ("HR") manager for nine years until he was terminated on January 19, 2001. Two days prior to his termination, Watts's supervisor, Robert Thomas, presented Watts with a letter notifying him of his termination. Thomas indicated to Watts that the company had implemented a reduction

in force ("RIF") due to both a projected downturn in business in 2001 and the company's conversion to a new enterprise management system that would require less manpower. Thomas terminated Watts as opposed to two other HR managers, Laticia Lasso and Dianne Scholtes, each of whom possessed unique skills that Watts lacked. Subsequent to his termination, Watts's job responsibilities were distributed among the remaining HR employees. Along with Watts, thirty-four employees from differing departments were terminated, twenty-eight of which were forty years of age or older. Watts was fifty-one years old at the time of his termination. The only remaining claim in this action is for discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1). Advance moves for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). On summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

(quoting FED. R. CIV. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Corp.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

The ADEA precludes employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . .." 29 U.S.C. § 623(a)(1). In an ADEA case, an employee can defeat a summary judgment motion by utilizing either the direct method of proof or the indirect burden-shifting method defined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-803 (1973). Watts employs the indirect method. Under

this approach, a plaintiff must first establish a prima facie case by showing that: 1) he is a member of a protected class, 2) he was meeting his employer's legitimate work-related expectations, 3) he was subjected to an adverse employment action, and 4) he was treated differently than similarly situated employees outside the protected class. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002). If a plaintiff establishes a prima facie case, then the burden shifts to the employer to provide a "legitimate, nondiscriminatory reason" for the adverse employment action. *Id* at 876. If such a reason is supplied, then the employee must show that the reason is merely a pretext for unlawful discrimination. *Id*.

## I. Watts's Prima Facie Case

Watts proves that (1) he was over 40 years old when he was discharged (he was 51 years old), (2) he was performing to his employer's legitimate expectations (he received at least satisfactory remarks on all of his performance evaluations), and (3) he was discharged. Thus, only the last element of the prima facie case, whether Watts was treated differently than younger but otherwise similarly situated employees, is in dispute.

In determining whether a certain employee is similarly situated to other employees, the court should consider whether the employees possess analogous attributes, experience, education, and qualifications and are in materially parallel

positions. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). Watts argues that the two younger and non-terminated HR managers, Lasso and Scholtes, were similarly situated to him because they held the same job title as him. Advance argues that Watts was not similarly situated to his two co-managers because they possessed valuable skills that he lacked. Lasso is fluent in Spanish, thus giving her an advantage in Advance's Mexico and Border Zone operations. Scholtes is better trained in compensation matters and in using and writing computer software programs. Despite these differences, however, we cannot say as a matter of law that Watts was not similarly situated to his two co-managers in the HR department.

## II. Advance's Burden of Producing a Nondiscriminatory Reason

Since Watts has established a prima facie case of discrimination, the burden shifts to Advance to produce a legitimate nondiscriminatory reason for discharging him. *Krchnavy*, 294 F.3d at 876. Advance offers legitimate business reasons for Watts's discharge. Advance alleges that it implemented a company-wide RIF because it expected an economic downturn for the year 2001 and because a new software system was to be implemented. Watts concedes that the RIF was necessary for Advance to meet its budgetary goals, (Def. Statement of Facts ¶ 34), and that the new software system resulted in the need for fewer employees. (Def. Statement of Facts ¶¶ 5-6.) Pursuant to the RIF, Advance asserts that one of the three HR managers

needed to be let go. Although Watts had received satisfactory and above marks on his past performance evaluations, his supervisor Thomas chose him for termination. Thomas chose him because he believed that of the three HR managers, Watts was the most dispensable since his skills could more easily be replaced by remaining employees in the HR department. Lasso, unlike Watts, is bilingual in English and Spanish; Scholtes possessed computer-related skills beyond those of Watts and more recent and up to date compensation-related experience than him. In rebuttal, all Watts can state is his opinion that Spanish is not a necessity to Advance's Mexico and Border Zone operations and that he could quickly attain equivalent compensation and computer training if offered the chance. We find Watts's assertion that fluency in Spanish is not an asset in and along the border of Mexico baseless. Indeed, Watts admits that he could not conduct training for Advance's Border Zone employees without a translator. (Def. Statement of Facts ¶ 19.) Additionally, his counter-allegation that, with training, he could readily attain the skills Scholtes already possessed does not aid his cause. Why would Advance fire Scholtes if she was more highly qualified? Such an action would result in the need to train Watts to do the duties Scholtes was already capable of fulfilling.

## III. Pretext

Because Advance is able to establish a non-discriminatory reason for Watts's termination, the burden shifts back to Watts to show that the reason is merely a pretext for age discrimination. *Krchnavy*, 294 F.3d at 876. To show pretext, a plaintiff must establish that the given reason is a lie made by the employer to conceal its unlawful discriminatory intentions. *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1045 (7th Cir. 2000). "Pretext does not require that plausible facts presented by the defendant not be true, only that they not be the reason for the employment decision." *Id.* Thus, Watts need not show that Advance's explanation was a lie in the sense of it being a complete fabrication; instead, he must establish that age at least tipped the balance in favor of discharge. *See Testerman v. EDS Tech. Prods.*, 98 F.3d 297, 304 (7th Cir. 1996) (An ADEA plaintiff's "ultimate burden is to establish that age 'tipped the balance' in favor of discharge.") (quoting *Umpleby v. Potter & Brumfield, Inc.*, 69 F.3d 209 (7th Cir. 1995)). Pretext is shown "either by presenting direct evidence that a discriminatory reason motivated the employer's decision or by presenting evidence that the employer's proffered reason is unworthy of credence, thus raising the inference that the real reason is discriminatory." *Essex v. United Parcel Serv.*, 111 F.3d 1304, 1310 (7th Cir. 1997).

First, Watts relies on the assertion that the two HR managers, who were not terminated, were younger but otherwise similarly situated to him. In his own deposition, however, Watts admits differences in his responsibilities from those of the other two managers. Watts admits that Lasso was bilingual, a skill used in her Mexican and Border Zone responsibilities, and that Scholtes had compensation and computer abilities that Watts lacked. Watts's last minute affidavit, presented after his deposition, attempts to downplay these facts by indicating that his performance was better than the other two managers and that he would require only slight training to meet the others' job responsibilities. Although this Court may not evaluate the credibility of evidence on summary judgment, we must evaluate the weight to be given to that evidence. *Childress v. Arcata Graphics Co.*, 782 F. Supp. 397, 404 (N.D. Ill. 1992) (citing *Anderson*, 477 U.S. at 249). Watts essentially asks the Court to rely on his assertion that he was the most qualified applicant and therefore Advance's failure to retain him must have been due to discrimination. We, however, "cannot sit in review of an employer's appraisal of applicants' qualifications unless the plaintiff puts forth some tangible evidence to show that the employer's decisions were motivated by improper factors . . .." *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 516 (7th Cir. 1996). Watts fails to present any tangible evidence that he was the more qualified manager in any form other than his affidavit, which sits in direct opposition to his

earlier taken deposition. Without such tangible evidence the Court improperly would sit as a super personnel department reviewing Advance's business decisions. *See McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992).

Second, Watts relies on Phillips Chairman Cor Boonstra's remarks in a 1997 speech that the company needed to "create room for younger people" and that "people should not have to be older than 40 before they become a director" because otherwise the company's young talent would "look elsewhere and then [Philips would] lose valuable talent to the competition." This statement is not a statement of prejudice against older employees. If anything, it seems more attributable to Boonstra's concern that there was actually a culture of favoritism for older employees that resulted in young but able employees not being promoted and eventually leaving for the competition out of dissatisfaction. Certainly, the substance of the statement is not very probative, if at all, of discrimination against older employees. Apart from the substance of the comment, the person making the comment and the timing of the comment are important in determining whether an inference of pretext can be made from such a remark. *Cullen v. Olin Corp.*, 195 F.3d 317, 323 (7th Cir. 1999). There is nothing in the record to suggest that Boonstra participated in the decision to terminate Watts's employment; that decision was made by Thomas. Furthermore, the remarks were made over three years before Watts was terminated. Boonstra's 1997

speech had nothing to do with the 2001 RIF at issue. *See Bahl v. Royal Indemnity Co.*, 115 F.3d 1283, 1293 (7th Cir. 1997) (holding that discriminatory comments by non-decision makers cannot be relied on as evidence of pretext).

Third, Watts relies on the existence of a database compiled by Advance, which he contends was used in determining which employees to terminate. The database contains a column indicating whether each Advance employee was "over" or "under" the protected age of 40. The database also includes each employee's race, gender, job title, and supervisor. Advance maintains that the database was prepared in order for in-house counsel to conduct an Equal Employment Opportunity impact analysis prior to the RIF. All Watts proffers with respect to the database is that it existed. This in not evidence of pretext.

Finally, Watts relies on the fact that, of the thirty-four employees discharged in the RIF, a disproportionate number of them (twenty-eight) were in the age-protected class. Statistics of this type, although alone are not generally determinative of a violation, can constitute circumstantial evidence of discrimination. *See Bennett v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002); *see also Rummery v. Illinois Bell Tel.*, 250 F.3d 553, 559 (7th Cir. 2001) (statistics that simply show a disparate impact are not sufficient to show a violation of the ADEA). These statistics, however, stand alone and, as such, are insufficient to withstand a motion for summary judgment.

In sum, with respect to pretext, other than the statistical evidence, Watts offers: the conclusory allegation that he was more highly qualified than the other two HR managers, which is contrary to his admission that he would have required training to take on their responsibilities; an unrelated and non-discriminatory remark made by the former chairman more than three years prior to the RIF; and the existence of a database of all Advance employees (terminated and retained) that listed their gender, race, job title, supervisor, and age protected status. None of this other evidence is probative of pretext. Thus, Watts has failed to present sufficient evidence upon which a reasonable jury could conclude that Watts was terminated because of his age and not because he was the most dispensable HR manager at a time when the company was downsizing. For that reason, there remain no genuine issues of material fact, and the motion must be granted as a matter of law.

## CONCLUSION

Based on the foregoing analysis, we grant the motion for summary judgment.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: JUL 17 2003